UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.  19-81248-CIV-DIMITROULEAS

PENNSYLVANIA MANUFACTURERS'
ASSOCIATION INSURANCE
COMPANY,

        Plaintiff,

vs.

NORTH AMERICAN AUTOMOTIVE
SERVICES, INC., EDWARD NAPLETON,
JR., DEE FRANK GRINNELL, AND JANE
DOE,

        Defendants.

_____/

## OMNIBUS ORDER ON MOTIONS FOR SUMMARY JUDGMENT

THIS CAUSE is before the Court on the Motion for Partial Summary Judgment on the

Duty to Defend submitted by Defendants North American Automotive Services, Inc. ("NAAS"),

Edward Napleton, Jr., and Dee Frank Grinnell[1] [DE 33], and Plaintiff's Motion for Partial

Summary Judgment on the Duty to Defend [DE 48] (together, "Motions").  The Court has

carefully considered the Motions, the parties' Statements of Fact and responses thereto [DE's 34,

46, 49, 55, 59], the Responses [DE's 45, 49, 53] and the Replies [DE's 57, 58] and is otherwise

fully advised in the premises.

### I.    BACKGROUND[2]

This is a declaratory judgment action arising out of two insurance policies Plaintiff issued

to NAAS: a Commercial Garage/Auto Dealers Liability policy ("Auto Dealers Policy") and a

---

[1] Defendant Jane Doe is not a party to the motion.
[2] All statements in the Background section are derived from uncontested portions of the parties' respective
Statements of Material Facts and supporting materials, unless otherwise noted.

Workers Compensation and Employers Liability policy ("WC/EL Policy") and with the Auto Dealers Policy, "Policies"), both covering the period of September 1, 2017, through September 1, 2018.  Plaintiff seeks declaratory judgment that it has no duty under either Policy to defend Defendants[3] against certain civil claims and criminal charges arising from the alleged sexual assault of Jane Doe, an NAAS employee, by Mr. Napleton.  Defendants argue that Plaintiff does have a duty to defend them against all these actions and have asserted a counterclaim for breach of contract against Plaintiff.

The alleged sexual assault occurred on the night of August 7, 2018.  According to a complaint Ms. Doe filed in the Circuit Court for the Fifteenth Judicial Circuit in and for Palm Beach County, Florida (such complaint, the "Doe Complaint," and such action, the "Doe Lawsuit"), the events of that evening were as follows: Ms. Doe, Mr. Grinnell, and Mr. Napleton all attended an evening work function at a West Palm Beach restaurant.  The dinner ended and Ms. Doe, who had intended to return home after the meal, accepted an invitation to join colleagues at the restaurant bar for drinks.  She became incapacitated and shortly after midnight Mr. Grinnell and Mr. Napleton left her, unconscious, in a room at the West Palm Beach Marriott, which Mr. Grinnell paid for.  Mr. Grinnell gave Mr. Napleton a key to the room, and Mr. Napleton used that key to enter the room and engage in sexual activity with Ms. Doe, allegedly while she was still incapacitated.  The Doe Complaint asserts claims of sexual battery against Mr. Napleton, negligence against Mr. Grinnell, and civil conspiracy and intentional infliction of emotional distress against both Mr. Grinnell and Mr. Napleton.  Mr. Napleton was also charged criminally for his conduct.  NAAS is not a named defendant in the Doe Lawsuit.

---

[3] For purposes of this order, "Defendants" refers to NAAS, Mr. Grinnell, and Mr. Napleton.

Separately from the Doe Lawsuit, Ms. Doe also filed a claim with the Office of Equal Opportunity ("OEO Claim").  In the OEO Claim, Ms. Doe asserts that NAAS discriminated against her on the basis of her sex.  Specifically, she claims that she suffered severe psychological injuries as a result of the alleged assault that prevented her from returning to work at NAAS, which had not only continued to employ Mr. Napleton, but had released a press statement expressing its support for him in the Doe Lawsuit.  [DE-1-1] at 5.  She requested a leave of absence from NAAS, but NAAS denied Ms. Doe's request for leave and terminated her. *Id.*

NAAS timely provided Plaintiff with notice of both the Doe Lawsuit and the OEO Claim and sought defense on behalf of all Defendants pursuant to duty-to-defend provisions contained in both Policies.  Plaintiff denied coverage of both the Doe Lawsuit and the OEO Claim and filed the instant action.

## II.   STANDARD OF REVIEW

Under Rule 50(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The movant bears "the stringent burden of establishing the absence of a genuine issue of material fact."  *Suave v. Lamberti*, 597 F. Supp. 2d 1312, 1315 (S.D. Fla. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

"A fact is material for the purposes of summary judgment only if it might affect the outcome of the suit under the governing law."  *Kerr v. McDonald's Corp.*, 427 F. 3d 947, 951 (11th Cir. 2005) (internal quotations omitted).  Furthermore, "[a]n issue [of material fact] is not 'genuine' if it is unsupported by the evidence or is created by evidence that is 'merely colorable' or 'not significantly probative.'"  *Flamingo S. Beach I Condo. Ass'n Inc. v. Selective Ins. Co. of*

*Southeast,* 492 F. Appx 16, 26 (11th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986)).  "A mere scintilla of evidence in support of the nonmoving party's position is insufficient to defeat a motion for summary judgment; there must be evidence from which a jury could reasonably find for the non-moving party."  *Id.* at 26-27 (citing *Anderson*, 477 U.S. at 252).  Accordingly, if the moving party shows "that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the nonmoving party" then "it is entitled to summary judgment unless the nonmoving party, in response comes forward with significant, probative evidence demonstrating the existence of a triable issue of fact."  *Rich v. Sec'y, Fla. Dept. of Corr.*, 716 F. 3d 525, 530 (11th Cir. 2013) (citation omitted).

## III.   DISCUSSION

The parties agree that Illinois law applies.[4]  Under Illinois law, "[a]n insurer may not justifiably refuse to defend an action against its insured unless it is clear from the face of the complaint that the allegations fail to state facts that bring the case within, or potentially within, the policy's coverage." *Valley Forge Ins. Co. v. Swiderski Elecs., Inc.*, 860 N.E.2d 307, 315 (Ill. 2006) (emphasis added).  In duty-to-defend actions, Illinois courts liberally construe the underlying complaint and the insurance policy against the insurer as drafter of the policy and resolve all doubts in favor of the insured.  *See Country Mut. Ins. Co. v. Bible Pork, Inc.*, 42 N.E.3d 958, 963 (Ill. App. Ct. 2015); *Shell Oil Co. v. AC&S, Inc.*, 649 N.E.2d 946, 950 (Ill. App. Ct. 1995).

a.   <u>Extrinsic Evidence</u>

---

[4] Plaintiff specifies that it only agrees Illinois law applies with respect to these particular Motions.

As an initial matter, Plaintiff objects to the inclusion of several facts in Defendant's Statement of Facts which were only disclosed to Plaintiff through affidavits submitted in connection with Defendants' Motion for Partial Summary Judgment and which were not alleged in the Doe Complaint.  These additional facts are that (i) the work function that took place on August 7, 2018, was related to an NAAS professional conference being held on August 8, 2018, (ii) that Ms. Doe was scheduled to speak at the conference and had taken Xanax to assuage nervousness she felt in connection with her speaking role, and (iii) the Xanax label warned against taking Xanax with alcohol.  Plaintiff asserts that the Court should not consider these facts when determining whether Plaintiff has a duty to defend.  It cites to *Pekin Ins. Co. v. Wilson*, 930 N.E.2d 1011 (Ill. App. Ct. 2010), for the proposition that, under Illinois law, whether an insurer owes a duty to defend an action brought against an insured "is determined solely by reference to the allegations of the complaint. If the complaint alleges facts which bring the claim within the potential indemnity coverage of the policy, the insurer is obligated to defend the action." *Wilson*, 930 N.E.2d at 1018.  By excising a few sentences from the opinion, however, Plaintiff misrepresents the holding.  While the *Wilson* court granted that the general rule is that courts should look to the "eight corners" of the contract and the complaint when determining whether there is a duty to defend, it went on to conclude "that a circuit court may, under certain circumstances, look beyond the underlying complaint in order to determine an insurer's duty to defend . . . ." *Id.* at 1019.  Subsequent case law confirms that "[i]n a summary judgment proceeding, when determining whether a duty to defend exists, the court is not limited to considering the allegations of the complaint but may consider evidence usually considered in ruling on a motion for summary judgment, so long as such evidence does not tend to determine an issue critical to the determination of the underlying law suit." *Owners Ins. Co. v. Seamless*

*Gutter Corp.*, 960 N.E.2d 1260, 1270 (Ill. App. Ct. 2011).  The exception to the general rule is permissive, so even where a court could review extrinsic evidence, it may decline to do so.

The facts to which Plaintiff objects were adduced in a deposition in the underlying Doe Lawsuit, which is the type of evidence a court usually considers in a summary judgment proceeding.   Although Plaintiff disputes all three facts, it does not proffer counterevidence such that the dispute is truly genuine.  Plaintiff's specific objection is that Defendants only just filed the affidavits which form the evidentiary basis for the disputed facts at the same time that they filed their Motion for Partial Summary Judgment[5] and Plaintiff has not yet deposed the affiants themselves.  The dispute does not arise from any evidence tending to suggest that the proffered facts are inaccurate.  That Plaintiff does not admit these facts is therefore insufficient reason to exclude them.

Plaintiff argues that the Court still should not consider these disputed facts because they tend to determine whether Ms. Doe was incapacitated on the night of August 7, which is an issue critical to the Doe Lawsuit.  Defendants counter that the Court could consider these alleged facts without determining the underlying question of Ms. Doe's capacity to consent.  With respect to Ms. Doe's speaking engagement and her preparation therefor, the question of Ms. Doe's capacity to consent is not relevant to the inquiry at hand.  Her speaking role and her use of Xanax may therefore be considered for other purposes here.  And whether or not there was an NAAS event on August 8 does not tend to decide a critical issue in the Dow Lawsuit in the first place.  The

---

[5] Defendants claim that Plaintiff must have had knowledge of these facts when they denied the OEO Claim on July 18, 2019, because the letter of denial references a "business related conference."  They also assert that a press statement from Ms. Doe's attorney containing these facts has been publicly available online since June of 2019.  The phrase "business related conference," however, is very vague, and there is no evidence that Plaintiff had actual knowledge of the press statement prior to denying coverage.  Given that Plaintiff has also filed an affidavit swearing that it did not have knowledge of these facts prior to Defendants' filing of its Motion for Partial Summary Judgment, Defendants' argument on this point is tantamount to asserting that Plaintiff has engaged in bad faith, which the Court is not inclined to find on such slight evidence as is presented here.

Court notes, however, that disposition of the Motions requires construction and application of contractual terms and these newly-proffered facts will only have limited relevance to that endeavor.  Therefore, while the Court may consider these disputed facts herein, such consideration shall be for the narrow purpose of determining whether certain provisions in the Policies have been satisfied.

      b.  <u>Plaintiff has no duty to defend Mr. Napleton or Mr. Grinnell in the Doe Lawsuit</u>

Defendants contend that Plaintiff has a duty under the Auto Dealers Policy to defend Mr. Grinnell and Mr. Napleton in the Doe Lawsuit.[6]  Specifically, they argue that the Doe Lawsuit alleges injuries covered by either the "Bodily Injury and Property Damage Liability" provision ("Bodily Injury Provision") or the "Personal and Advertising Injury Coverage" provision ("Personal Injury Provision"), both contained in the Auto Dealers Policy in a section entitled "General Liability Coverage."  The Bodily Injury Provision states that Plaintiff "will pay all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies caused by an 'accident', and resulting from [NAAS's] 'auto dealer operations' other than the ownership, maintenance or use of 'autos'."  DE-1-3 at 142.  The Personal Injury Provision obligates Plaintiff to "pay all sums the 'insured' legally must pay as damages because of 'personal and advertising injury' to which this insurance applies, caused by an offense arising out of [NAAS's] 'auto dealer operations', but only if the offense was committed in the coverage territory during the policy period."  *Id.* at 146.

Plaintiff argues that neither provision covers the incident in question because (i) the events of August 7, 2018, do not qualify as "auto dealer operations" as that term is defined in the Auto Dealer Policy, (ii) even if the events leading to Ms. Doe's injuries were "auto dealer

---

[6] Mr. Napleton and Mr. Grinnell are not "insureds" under the WC/EL Policy.

operations," the injuries did not "arise from" or "result from" those auto dealer operations, and (iii) Mr. Grinnell and Mr. Napleton are not "insureds" as that term is defined in the Auto Dealer Policy. Defendants take the opposite position on each point.

i. *Ms. Doe's injuries did "arise" from "auto dealer operations"*

The term "auto dealer operations" is defined in the Auto Dealer Policy as "the ownership, maintenance or use of locations for an 'auto' dealership and that portion of the roads or other accesses that adjoin these locations," including "all operations necessary or incidental to an 'auto' dealership." DE-1-3 at 156. Plaintiff first asserts that this definition is clearly tied to the actual dealership locations, and therefore any off-site events cannot qualify as "auto dealer operations." The language of the definition does not support this very narrow reading, however. The definition does not clearly state, as it might have, that only those activities which occur on dealership premises are covered operations. Nor does it follow that all activities related to the ownership, maintenance, or use of an auto dealership occur only on the auto dealership lot. Test drives, for example, are an inherent part of auto dealership operations but do not occur within the confines of the dealership itself. Also, as Defendants point out, the coverage area for the Auto Dealers Policy is the entire United States, not only the dealership properties. This argument is therefore unpersuasive.

Plaintiff next argues that even if off-site events could constitute "auto dealer operations," the post-dinner social activity was a private affair not necessary or incidental to NAAS's business any more than an informal gathering of coworkers in off hours would be. Defendants counter that Plaintiff improperly assumes that the work event ended exactly when the dinner broke. They argue that the postprandial socializing that occurred on the evening of August 7 was associated with the NAAS conference taking place the next day. They further assert that because

(i) the evening drinking was associated with that conference, (ii) Ms. Doe took a Xanax in preparation for that conference, and (iii) Ms. Doe, Mr. Grinnell, and Mr. Napleton only crossed paths on August 7 because of that conference, that the events of August 7 were at least "incidental to 'auto dealer operations.'"

"Incidental" is not a defined term in the Auto Dealers Policy, but "[w]hen construing the language of an insurance policy, courts must accord terms their plain and ordinary meaning and apply those terms as written unless such application contravenes public policy." *Shriver Ins. Agency v. Utica Mut. Ins. Co.*, 750 N.E.2d 1253, 1257 (2001). Black's Law Dictionary defines the term "incidental" as "[s]ubordinate to something of greater importance; having a minor role." INCIDENTAL, Black's Law Dictionary (11th ed. 2019). Defendants' argument does little to bring the postprandial events of August 7 within the ambit of this definition. While the Court can reasonably accept that the conference of August 8 was held to achieve some company-wide business objectives which were at least incidental to NAAS's auto dealer operations, it does not follow that everything the attendees might have done while in town for that conference was "incidental" to NAAS's dealership operations. The Court is not prepared to find, for example, that an employee's prescription drug use is incidental to an insured's business, even if such use is necessary to the employee's satisfactory performance of her duties. To find otherwise would require insurers to imagine every possible act an insured company's employee might engage in and exclude each action piecemeal, no matter how attenuated they are from the insured business or how unlikely they are to transpire.

Nevertheless, the Court may reasonably infer that the definition is met here with respect to the August 7 working dinner. In general, a business must employ people in order to function, and employment relationships themselves require some maintenance. It therefore cannot be

disputed that employee meetings are at least an incidental occurrence in any business's operations.  In this particular case, a day-long conference with geographically diverse attendees, such as the one NAAS was holding on August 8, 2018, would reasonably have required some final preparation.  The Court therefore finds that the working dinner held the day before on August 7 was at least incidental to NAAS's auto dealership operations.

It is not necessary to determine whether anything that occurred after the working dinner constitutes "auto dealer operations."  Illinois courts interpret the phrase "arising from" expansively in insurance contracts and find that mere "but for" causation satisfies it.  *See Am. Econ. Ins. Co. v. DePaul Univ.*, 890 N.E.2d 582, 588 (Ill. App. Ct. 2008) ("Illinois courts have held that the phrase 'arising out of' is 'both broad and vague, and must be liberally construed in favor of the insured; accordingly, 'but for' causation, not necessarily proximate causation, satisfies this language.'") (quoting *Maryland Casualty Co. v. Chicago & North Western Transportation Co.*, 466 N.E.2d 1091 (Ill. App. Ct. 1984)).  There is no functional difference in meaning between the phrases used in the Personal Injury Provision, which specifies that an injury must "arise from" NAAS's auto dealer operations, or the Bodily Injury Provision, which requires an injury to "result from" those operations.  Thus, both provisions are satisfied if the working dinner itself was a but-for cause of Ms. Doe's injuries, regardless of whether anything that occurred after the dinner also constitutes "auto dealer operations."  Here, but for the working dinner, the events of the evening of August 7, 2018, would not have transpired and Ms. Doe would not have been injured.  Therefore, even if the cocktail hour that succeeded the working dinner does not constitute "auto dealer operations," both the Bodily Injury Provision and the Personal Injury Provision are satisfied with respect to the connection between Ms. Doe's injuries and NAAS's insured operations.  Plaintiff's first argument therefore fails.

10

       *ii.   Mr. Grinnell and Mr. Napleton are not "Insureds"*

Plaintiff next argues that neither the Bodily Injury Provision nor the Personal Injury Provision covers the conduct in question because neither Mr. Grinnell nor Mr. Napleton are "insureds" within the meaning of the Auto Dealers Policy.  Defendants counter that both are "insureds" in their capacities as executive officers and employees of NAAS and its named affiliates.

The definition of "insured" in the Auto Dealers Policy covers not only NAAS itself, but also certain named affiliates ("Insured Affiliates"), plus the individual employees and executive officers of NAAS and its Insured Affiliates.  This coverage of individuals is limited, however. Executive officers qualify as "insureds" only with respect to their duties as officers, and employees are only covered for acts within the scope of their employment or duties related to "auto dealer operations."  DE 1-3 at 149.

Plaintiffs argue that Mr. Grinnell and Mr. Napleton were not acting within the scope of their professional roles on the night of August 7, 2018, because sexual assault is not a job duty of Mr. Napleton's, and his assault must also be imputed to Mr. Grinnell's actions as well. Defendants counter that Mr. Grinnell's and Mr. Napleton's actions were an "attempt to protect Doe during her alleged intoxicated state" and therefore "the actions of Grinnell and Napleton cannot be seen wholly outside of the privileged status" of executives.  DE-53 at 16, 18.

Neither argument is persuasive.  As Defendants point out, it is improper to assume that Ms. Doe's allegations are correct when determining whether a duty to defend exists, as Plaintiff's argument does.  And although Defendants cobble together key terms from unrelated portions of the Doe Complaint in an attempt to paint the allegations therein as allegations against

Mr. Grinnell and Mr. Napleton in their executive capacities, this patchwork argument fails to accurately represent the assertions in the Doe Complaint. Neither Plaintiff nor Defendants clearly state how the actual conduct alleged in the Doe Complaint does or does not relate to Mr. Grinnell's and Mr. Napleton's roles as employees and executives.

The Court finds that a fair reading of the Doe Complaint does not indicate that Mr. Grinnell and Mr. Napleton were even potentially acting within their professional duties when they engaged in the conduct described in the Doe Complaint. The actual conduct alleged in the Doe Complaint is that (i) Mr. Grinnell brought Ms. Doe in a compromised state to a hotel room and left her there, (ii) Mr. Grinnell gave Mr. Napleton a key to the hotel room where he had left Ms. Doe unconscious and alone, and (iii) Mr. Napleton engaged in sexual activity with Ms. Doe. The last of these actions is not even plausibly related to the execution of professional duties. Regardless of Ms. Doe's capacity to consent that night, Defendants do not explain what executive duty Mr. Napleton was discharging when he had sexual relations with her. Contrary to Defendants' argument, not only can it be said that those actions *were* wholly outside the privileged status he occupied as an executive, but it hardly seems disputable that sexual activity is not within the job description of an auto dealership executive. For the same reasons, it is patently implausible that these actions were undertaken in his capacity as an NAAS employee, either. Mr. Napleton is therefore not an "insured" under the Auto Dealers Policy insofar as Ms. Doe's claims against him relate to the sexual activity itself.

With respect to the other alleged actions, the Doe Complaint does not contain, and Defendants do not offer, any facts which show that Mr. Grinnell and Mr. Napleton were discharging professional duties when Mr. Grinnell assumed responsibility for the incapacitated Ms. Doe and left her, unconscious, in a hotel room and gave Mr. Napleton the key. Aside from

12

stating once that Mr. Napleton and Mr. Grinnell were also in attendance at the August 7 dinner meeting and that they are "owners, executives, and /or managers" of NAAS, the Doe Complaint makes no further mention of either man's relationship to NAAS or their professional duties. This passing mention of Defendants' employment relationship is the sort of identifying detail one would expect in a personal injury action and does not, on its own, mean that Mr. Napleton and Mr. Grinnell were acting in their capacity as executives on the night in question. And there are no other facts alleged in the Doe Complaint which could lead the Court to reasonably read it as asserting claims against Mr. Grinnell and Mr. Napleton in their official capacities. Of course the Doe Complaint states that the parties involved were employed by the same entity and were only in the same place on the evening in question as a result of that employment, but that is all. To find that this is sufficient to implicate Mr. Grinnell and Mr. Napleton in their professional roles, however, would read the limitations completely out of the "insured" definition. Even considering facts outside the Doe Complaint does not change the Court's conclusion. It is of no moment that the NAAS conference was the next day; the fact that one has professional obligations during work hours has no bearing on whether one has professional obligations outside of work hours.

Rather, the Court finds that the Doe Complaint clearly describes the personal choices and actions of individuals following an extraprofessional gathering. The Doe Complaint states that Ms. Doe intended to leave the restaurant after the working dinner ended, indicating that professional obligations ceased at that point. It also states that Mr. Grinnell personally paid for the hotel room for Ms. Doe, into which he installed Ms. Doe after midnight, an hour much later than one would expect a professional event to continue, by dragging her by her feet when she became unable to walk. These asserted facts do not paint the picture of an executive response.

Thus, even if these actions were an attempt to protect Ms. Doe, Defendants fail to connect that attempt to Mr. Grinnell's and Mr. Napleton's professional duties.  Mr. Grinnell and Mr. Napleton therefore do not fit the Auto Dealers Policy's definition of an "insured," and Plaintiff has no duty to defend them against the Doe Lawsuit.

        c.  <u>Plaintiff has no duty to defend NAAS against the OEO Claim</u>

Defendant NAAS is only defending against Ms. Doe's OEO Claim.  NAAS asserts that Plaintiff has a duty to defend it against the OEO Claim under both the WC/EL Policy and the Auto Dealers Policy.  Plaintiff argues that it has no duty to defend NAAS in the OEO proceedings because (i) the OEO Claim does not qualify as a "suit" under the Auto Dealers Policy, and (ii) the allegations Ms. Doe makes in the OEO Claim fall under exclusions from coverage in both Policies.  NAAS responds that the OEO Claim does qualify as a "suit," but does not directly respond to Plaintiff's argument that the OEO Claim is covered by exclusions under both Policies.  Rather, NAAS relies on the Court finding (i) that Plaintiff has a duty to defend against the Doe Lawsuit, and (ii) that the OEO Claim is a part of the Doe Lawsuit such that Plaintiff has a duty to defend against the entire lawsuit even if only some of the allegations presented therein are potentially covered injuries.

Regardless of whether the OEO Claim qualifies as a "suit" under the Auto Dealers Policy, the allegations contained therein are clearly excluded from coverage under both Policies. With respect to the Auto Dealers Policy, the Court cannot find that it even applies since Ms. Doe does not appear to seek relief for any bodily injury in the OEO Claim.  The only allegations the Court finds in the OEO Claim are sex discrimination and, possibly, discrimination on the basis of disability.  The only injuries Ms. Doe lists in her OEO claim are emotional and psychological injuries including post-traumatic stress disorder, and Illinois courts have found that mental harm

does not constitute "bodily injury" where it is defined in nearly identical terms to the Auto Dealers Policy's definition. *See, e.g.*, *Batter-Up, Inc. v. Commercial Union Ins., Co.*, No. 97 C 4032, 1997 WL 545348, at *4 (N.D. Ill. Aug. 29, 1997) (finding that "mere allegations of emotional distress have routinely been found to fall outside the definition of 'bodily injury' absent a claim of some physical injury."). Even assuming Ms. Doe has alleged a "bodily injury" in the OEO Claim, however, the Auto Dealers Policy clearly excludes coverage for bodily injury arising out of termination of a person's employment or the harassment or discrimination of an employee. [DE 1-3] at 143, 148. The Auto Dealers Policy therefore clearly does not cover the OEO Claim.

The WC/EL Policy also does not cover the OEO Claim. In the WC/EL Policy, Plaintiff agreed to "pay all sums that [NAAS] legally must pay as damages because of bodily injury to [its] employees, provided the bodily injury is covered by this Employers Liability Insurance." [DE 1-4] at 69. The Court will assume for the purpose of this discussion that Ms. Doe's bodily injuries were covered by the Employers Liability Insurance. Even with that assumption, however, the WC/EL Policy specifically excludes "[d]amages arising out of . . . harassment, . . . discrimination against or termination of any employee, or any personnel practices, policies, acts or omissions" from coverage. [DE-1-4] at 70. This exclusion clearly covers all possible allegations the OEO Claim could be read to assert. Because both Policies clearly exclude the allegations asserted in the OEO Claim, and because Plaintiff bears no other duty to defend in the Doe Lawsuit that could possibly trigger an obligation to defend NAAS in the OEO Claim as well, Defendants' arguments on this point fail.

Plaintiff therefore has no duty to defend any of the Defendants against the Doe Lawsuit, the OEO Claim, or the criminal charges pending against Mr. Napleton.  Plaintiff's Motion for Partial Summary Judgment is thus due to be granted.

## IV.   CONCLUSION

Based upon the foregoing, it is **ORDERED AND ADJUDGED** as follows:

1.  Defendants' Motion for Partial Summary Judgment on the Duty to Defend [DE 33] is **DENIED**.

2. Plaintiff's Motion for Partial Summary Judgment on the Duty to Defend [DE 44] is hereby **GRANTED**.  Plaintiff's request for oral argument is **DENIED**.

3.  After careful consideration, it appears to the Court that the ruling herein may be dispositive not only of the pending cross-motions for partial summary judgment as to the duty to defend, but as to the entire case.  The Court notes the following discussion by Judge Hurley recognizing that the court should have entered full summary judgment more than a year earlier rather than only partial summary judgment as to the duty to defend:

> The pleadings in this case reflect that the Court and the parties focused their attention on the distinction between an insurer's duty to defend and its duty to indemnify. They recognized that "[a]n insurer's duty to defend its insured is separate from and broader than its duty to indemnify the insured." *Hale v. State Farm Fla. Ins. Co.*, 51 So.3d 1169, 1171 (Fla. 4th DCA 2010). Both the Court and the parties, however, overlooked the correlative principle that a finding of no duty to defend, as a matter of Florida law, necessarily includes a finding of no duty to indemnify. *See Trailer Bridge, Inc. v. Ill. Nat'l Ins. Co.*, 657 F.3d 1135, 1146 (11th Cir.2011) ("[A] court's determination that the insurer has no duty to defend requires a finding that there is no duty to indemnify.") (quoting *Philadelphia Indem. Ins. Co. v. Yachtsman's Inn Condo Ass'n, Inc.*, 595 F.Supp.2d 1319, 1322 (S.D.Fla.2009)) (internal quotation marks omitted). Therefore, the Court's order of June 18, 2013, denominated as an "Order Granting Partial Summary Judgment" [ECF No. 89], predicated on a determination that Lloyd's owed no duty to defend Brasner in the underlying AXA or GIII lawsuits, necessarily included a determination that Lloyd's owed no duty to indemnify Brasner. The descriptive limitation "Partial" in the order's title was incorrect. As indicated, the order resolved all questions pending in the case and, but for the

entry of a judgment, brought judicial labor to an end. The corresponding "Partial Judgment" [ECF Nos. 93 and 136] was in reality a final judgment that Lloyd's had neither a duty to defend nor a duty to indemnify. Today's decision then is simply a confirmation of an earlier holding.

*Certain Interested Underwriters at Lloyd's, London v. AXA Equitable Life Ins.*, Co., 32 F. Supp. 3d 1226, 1230–31 (S.D. Fla. 2014). Accordingly, absent an objection being filed on or before August 21, 2020, supported by legal authority, as to why today's ruling does not resolve this case in its entirety, the Court will enter final judgment for Plaintiff.

   **DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 14th day of August, 2020.

WILLIAM P. DIMITROULEAS
United States District Judge

Copies furnished to:

Counsel of Record

17